NOT DESIGNATED FOR PUBLICATION

STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

07-1426

JAB OF OAKDALE, LLC

VERSUS

OAKWOOD INN DEVELOPMENT CORP.

**********

APPEAL FROM THE
THIRTY-THIRD JUDICIAL DISTRICT COURT
PARISH OF ALLEN, NO. C-2006-484
HONORABLE PATRICIA C. COLE, DISTRICT JUDGE

**********

GLENN B. GREMILLION
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders and
Glenn B. Gremillion, Judges.

AFFIRMED.

Daniel M. Landry, III
P. O. Box 3784
Lafayette, LA 70502
(337) 237-7135
Counsel for Plaintiff/Appellant:
    JAB of Oakdale, LLC

**Gary K. McKenzie**
**Steffes, Vingiello & McKenzie, LLC**
**13702 Coursey Blvd., Bldg. 3**
**Baton Rouge, LA 70817**
**(225) 751-1751**
**Counsel for Defendant/Appellee:**
     **Oakwood Inn Development Corp.**

GREMILLION, Judge.

The plaintiff, JAB of Oakdale, LLC, appeals the judgment of the trial court granting an involuntary dismissal in favor of the defendant, Oakwood Inn Development Corporation, following the close of its evidence during a bench trial. We affirm.

## ISSUES

On September 11, 2006, JAB filed a Petition for Monies Due Under Multiple Indebtedness Mortgage alleging that Oakwood was indebted to it in the amount of $97,367.26, plus interest and attorney's fees based on its failure to remit payment on a December 12, 2003 Multiple Indebtedness Mortgage. The matter proceeded to a bench trial. After JAB presented its evidence and rested, Oakwood moved for an involuntary dismissal pursuant to La.Code Civ.P. art. 1672. Following argument on the motion, the trial court granted an involuntary dismissal in favor of Oakwood and dismissed JAB's suit. A judgment was rendered in this matter on August 7, 2007. This appeal by JAB followed.

## ISSUES

On appeal, JAB argues that the trial court erred in granting Oakwood's motion for involuntary dismissal and in finding that a hand note was necessary to perfect its multiple indebtedness mortgage.

## INVOLUNTARY DISMISSAL

Louisiana Code Civil Procedure Article 1672(B) provides:

In an action tried by the court without a jury, after the plaintiff has completed the presentation of his evidence, any party, without waiving his right to offer evidence in the event the motion is not granted, may move for a dismissal of the action as to him on the ground that upon the

1

> facts and law, the plaintiff has shown no right to relief. The court may then determine the facts and render judgment against the plaintiff and in favor of the moving party or may decline to render any judgment until the close of all the evidence.

A trial court is granted much discretion in its decision to grant a motion for involuntary dismissal and that decision is reviewed on appeal pursuant to the manifest error standard. *Touchet v. Hampton*, 06-1120 (La.App. 3 Cir. 2/7/07), 950 So.2d 895. A grant of an involuntary dismissal will be found proper if the trial court, after weighing the plaintiff's evidence, determines that it failed to prove its claim by a preponderance of the evidence. *Id.*

In support of its claim, JAB introduced the testimonies of Bernard Habid Karam and LaQuita Johnson, the mortgage, and copies of ten checks. Karam is the president of Oakwood, while Johnson is an officer of JAB and was employed as an office manager by Karam for his construction company and other companies. The first five checks were drawn on the account of Mr. or Mrs. Raymond Johnson. The first, dated August 1, 2003, #2591, was made payable to cash in the amount of $84,115.32; the second, dated September 5, 2003, #2428, was made payable to Hab Karam Construction in the amount of $2,000.00; the third, dated September 26, 2003, #2216, was made payable to Hab Karam Construction in the amount of $3,500.00; the fourth, dated October 2, 2003, #2223, was made payable to Hab Karam Construction in the amount of $7,300.00, and the fifth, dated October 15, 2003, #2243, was made payable to Hab Karam Construction in the amount of $2,203.49. The next five checks were drawn on the account of JAB of Oakdale, LLC. The first, a cashier's check dated October 31, 2003, was made payable to Kirk Knott in the amount of $78,288.00; the second, dated November 18, 2003, a temporary check, was made

2

payable to Gary Wells in the amount of $6,480.00; the third, dated November 18, 2003, a temporary check, was made payable to Cliff Sullivan in the amount of $2,796.00; the fourth, dated November 7, 2003, a temporary check, was made payable to First Federal in the amount $5,000.00; and the fifth, dated November 25, 2003, a temporary check, was made payable to the Allen Parish School Board in the amount of $9,989.00.

Karam testified that he executed the Multiple Indebtedness Mortgage on behalf of Oakwood in order to secure funding from JAB. Despite this document, he stated that JAB never lent any money to Oakwood. However, he testified that Johnson did loan money to his construction company. With regard to the checks, Karam testified that he did not recall receiving the first five checks ($84,115.32, $2,000.00, $3,500.00, $7,300.00, and $2,203.49). As for the next three checks ($78,288.00, $6,480.00, and $2,796.00), Karam testified that these checks were used to pay for services (electrical, masonry, canopy work) rendered on behalf of his construction company, but were paid by JAB as reimbursement for funds advanced by his construction company in constructing a building for JAB in Oakdale. He stated that he could not recall why the checks for $5,000.00 and $9,989.99 were paid to First Federal Savings and Loan and the Allen Parish School Board, respectively, but stated that at the time they were written, his construction company was building JAB's building in Oakdale, and they could have been in repayment of funds advanced on its behalf by his construction company.

Karam testified that the property subject to the Multiple Indebtedness Mortgage was the old Sunset Inn and restaurant, located on Highway 165 South in

3

Oakdale. He stated that the restaurant was rented out for $850.00 per month. Commencing in December 2003, he stated that Johnson received the rent from the restaurant to repay the money owed her. Karam stated that these payments continued through September 2004. He testified that she was paid an additional $9,100.00, on January 19, 2004, from money the construction company had received as unclaimed property. He stated that this was to repay her for debts owed by Hab Karam Construction.

Johnson testified that she agreed to borrow money and loan it to Karam, who was experiencing financial difficulties. To protect her loan, she stated that he agreed to give her a mortgage on property owned by Oakwood in return for monthly payments. Johnson stated that she borrowed $103,000.00 from Great Central Life Insurance Company on July 16, 2003. On August 1, 2003, she said that she wrote a check for $84,115.32 on her personal checking account and gave it to Karam. She testified that she wrote four additional checks ($2000.00, $3,500.00, $7,300.00, and $2,203.49) to Hab Karam Construction so it could cover its payroll.

Johnson next described three checks that she paid to various contractors for Hab Karam Construction. The first was a cashier's check for $78,288 to Kirk Knott, an electrical contractor, on October 13, 2003. The second was an October 18, 2003 check for $6,480.00 paid to Gary Wells, a contractor on jobs for Hab Karam Construction in Woodworth and Natchitoches. The third was a November 18, 2003 check for $2,796.00 to Cliff Sullivan, a subcontractor on a job for Hab Karam Construction in Natchitoches. Johnson testified that all three of these checks constituted money loaned to Hab Karam Construction. She stated that none of the

4

three contractors ever performed any work for JAB.

Johnson testified that the last two checks were also loans to Hab Karam Construction. The first, a November 7, 2003 check for $5,000.00, paid to First Federal Savings and Loan, was to cover Hab Karam Construction's payroll. The second, a November 25, 2003 check for $9,989.00, was paid to Allen Parish School Board to pay for sales taxes owed by Karam and his wife for a convenience store they owned in Oakdale.

Johnson stated that she received monthly payments of $850.00 from Karam, which were the rent payments from the restaurant located on Oakwood's mortgaged property. These payments commenced in September 2003 and continued through September 2004. She testified that she also received a payment of $9,100.00 from Oakwood which she applied towards the payment of its debt. She stated that the current balance on the $103,000 debt as of the date of the trial was $97,367.26, plus interest. She further said that she had retained an attorney in pursing her claim and, thus, was seeking attorney's fees.

Johnson stated that the multiple indebtedness mortgage was given by Oakwood to JAB. She further testified that the only document prepared by her original attorney with regard to the mortgage was the mortgage document itself. She did not have a promissory note, as indicated in the mortgage. Johnson stated that the debt indicated by the mortgage was lent to Oakwood, although none of the checks were directly made out to that entity. She stated that she loaned the money to Hab and Amy Karam. She said that they had several different businesses, Oakwood, Tiger Express, rental property, and Hab Karam Construction, but that all were intermingled.

5

She further testified that although checks were written on her personal checking account, the money was from JAB.

In granting the involuntary dismissal, the trial court held that JAB failed to prove by a preponderance of the evidence that the mortgage was perfected in this instance. In the absence of a hand note, it found no evidence of an underlying debt owed by Oakwood. Although it found evidence of a debt, it felt it more likely that it was owed by either Karam and his wife, personally, or their other business entities.

A mortgage is defined as a "nonpossessory right created over property to secure the performance of an obligation." La.Civ.Code art. 3278. However, the right created is accessory to the underlying obligation and is only enforceable to the extent of the obligation is enforceable. La.Civ.Code art. 3282. A conventional mortgage, such as the one at issue, is established by contract. La.Civ.Code arts. 3284 and 3287. As it must be in writing, the principles of contract interpretation found in the Louisiana Civil Code apply. La.Civ.Code arts. 2045, et seq. "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La.Civ.Code art. 2046.

The Multiple Indebtedness Mortgage lists Oakwood as the borrower/mortgagor and JAB as the lender/mortgagee. Indebtedness is defined in the mortgage act as:

> The word "Indebtedness" means any and all present and future loans, extensions of credit, liabilities and obligations of every nature and kind that I may now and/or in the future owe to or incur in favor or mortgagee, including without limitation, the loan evidenced by my promissory note dated, this day of signing, in the amount of **$103,000.00 at 8.5% APR for ten years (10) years of (120 payments) beginning from the date of first monthly mortgage payment**, whether such loans, extensions of credit, liabilities and obligations are direct or

6

indirect, or by way of assignment or purchase of a participation interest, absolute or contingent, voluntary or involuntary, determined or purely discretionary, and whether secured or unsecured, in principal, interest, costs, expense, attorney's fees and other fees and charges, whether any such indebtedness may be barred under any statute of limitations or prescriptive period or may be otherwise unenforceable or voidable for any reason. Notwithstanding any other provision of this Mortgage my additional loans, extensions of credit, and other liabilities and obligations in favor of Mortgagee, which are entered into before or after the date of this Mortgage primarily for personal, family or household (consumer) purposes, will not be secured by this Mortgage, unless and until Mortgagee complies with the disclosure, rescission and other requirements of the Federal Reserve Board Regulation Z, as applicable. *Further notwithstanding any other provision of this Mortgage, the maximum amount of indebtedness secured hereby shall be limited to $1,000,000.00.*

(emphasis in original).

After reviewing the record, we find no manifest error in the trial court's finding that JAB failed to prove by a preponderance of the evidence the existence of an underlying obligation owed by Oakwood. The Multiple Indebtedness Mortgage references no intention on the part of Oakwood to mortgage its property in order to secure obligations owed by Karam or his other business entities. Rather, the act encompasses only the indebtedness owed by Oakwood. It further contemplates that the debt owed by Oakwood will be in the form of a promissory note in the amount of $103,000.00. Johnson admitted that she possesses no such note.

Furthermore, none of the checks from Johnson or JAB were dispersed to Oakwood. Johnson testified that she loaned the money to Hab and Amy Karam. Although she testified that all of Karam's business entities were commingled, this overlooks the fact that Oakwood was incorporated. As such, it is a juridical person in its own right and its personality is distinct from that of its members. La.Civ.Code. art. 24. Accordingly, the judgment of the trial court granting an involuntary dismissal

7

in favor of Oakwood is affirmed.

## CONCLUSION

For the foregoing reasons, the judgment of the trial court is affirmed.

The costs of this appeal are assessed to the plaintiff-appellant, JAB of Oakdale, LLC.

**AFFIRMED.**

This opinion is NOT DESIGNATED FOR PUBLICATION, Uniform Rules—Courts of Appeal, Rule 2-16.3.

8